**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **STEVEN D. PARKER, Ed.D.** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:19-cv-436 |
| **LANCASTER COUNTY SCHOOL BOARD,** | ) |
| **KENYA MOODY,** | ) |
| **AUDREY THOMASSON,** | ) |
| and | ) |
| **CAROLYN YOUNG,** | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Steven D. Parker, Ed.D. ("Plaintiff" or "Dr. Parker"), by counsel, hereby alleges the following causes of action:

## INTRODUCTION

1. Dr. Parker brings causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against Defendants, Lancaster County School Board, Kenya Moody, and Audrey Thomasson, arising from their unlawful discrimination against Dr. Parker for testifying, assisting, and/or participating in an investigation of a racial harassment complaint against Ms. Moody and for opposing an unlawful use of race in LCSB's hiring practice for staff and administrators.

2. In addition, Dr. Parker brings a cause of action for defamation against Defendants Audrey Thomasson and Carolyn Young for their false statements to the press that Dr. Parker received poor performance evaluations or implying the same.

## PARTIES

3. Dr. Parker is a natural person and a citizen of the Commonwealth of Virginia, residing in Lancaster County, Virginia.

4. Defendant, Lancaster County School Board ("LCSB"), is the governing body of Lancaster County Public Schools, located in Lancaster County, Virginia.

5. Defendant, Kenya Moody ("Ms. Moody"), is a natural person and a citizen of the Commonwealth of Virginia. On information and belief, Ms. Moody resides in Lancaster County, Virginia. Ms. Moody is a member of LCSB.

6. Defendant, Audrey Thomasson ("Ms. Thomasson"), is a natural person and a citizen of the Commonwealth of Virginia. On information and belief, Ms. Thomasson resides in Lancaster County, Virginia. Ms. Thomasson is the Chair of LCSB.

7. Defendant, Carolyn Young ("Ms. Young"), is a natural person and a citizen of the Commonwealth of Virginia. On information and belief, Ms. Young resides in Lancaster County, Virginia. Ms. Young is a member of LCSB.

8. LCSB is an employer as defined by 42 U.S.C. § 2000e(b).

## JURISDICTION & VENUE

9. On or about February 7, 2019, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and, pursuant to a work sharing agreement, with the Virginia Division of Human Rights.

10. On March 14, 2019, the EEOC issued a Notice of Right to Sue to Plaintiff.

11.     Plaintiff timely files this action within ninety (90) days after receipt of the Notice of Right to Sue.

12.     This Court has subject matter jurisdiction of this action pursuant to Title VII.

13.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Count I and Count II arise under Title VII, a law of the United States.

14.     This Court has supplemental jurisdiction over the subject matter of Plaintiff's state law claim defamation against Ms. Young and Ms. Thomasson under Count III pursuant to 28 U.S.C. § 1367(a) because this claim is related to and arises from the same case or controversy as Plaintiff's claims under Count I and Count II.

15.     Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's claims occurred in Lancaster County, Virginia, which is a territory included within those assigned to the Richmond Division of the Eastern District of Virginia.

## FACTUAL BACKGROUND

16.     Dr. Parker is a fifty-four (54) year-old, Caucasian male.

17.     On or about May 14, 2014, LCSB entered into a three-year employment contract with Dr. Parker as Superintendent of the Lancaster County Public School Division.  *See* Superintendent Agreement, May 14, 2014, attached as Exhibit A.

18.     On or about October 19, 2015, LCSB extended Dr. Parker's employment contract through June 30, 2019 (the "Contract").  *See* Superintendent Agreement, Oct. 19, 2015, attached as Exhibit B.

19. On or about May 18, 2017, LCSB and Dr. Parker agreed to amend the Contract to increase the annual salary by $3,900.00. *See* Amendment to Superintendent's Agreement, May 18, 2017, attached as Exhibit C.

20. Section VII of the Contract, entitled "Contract Renewal," states, in part: "At least six months prior to the termination date of this Agreement (June 30, 2019), the Board and Superintendent shall communicate to each other their non-binding intent with respect to renewal of this Agreement."

21. At all times, Dr. Parker was an excellent employee of LCSB and satisfactorily performed his job duties.

22. For each year of his employment, Dr. Parker received a "highly effective" overall performance rating, including ratings (out of 5) of 4.6 for the 2014-2015 school year, 4.9 for the 2015-2016 school year, 5.0 for the 2016-2017 school year, and 4.86 for the 2017-2018 school year.

23. In May 2018, Ms. Thomasson told Dr. Parker and Mr. Russell that they needs to hire more African-American administrators even if such candidates are less qualified than Caucasian candidates. Both Dr. Parker and Mr. Russell strongly opposed this practice as an unlawful use of race in its hiring practice for administrators.

24. In August and September 2018, pursuant to the Contract, Dr. Parker began discussions with LCSB to renew his contract.

25. At this time, all members of LCSB were unanimous in their intent and desire to renew Dr. Parker's contract.

26. On November 6, 2018, Dr. Parker received his performance report for the 2017-2018 school year. In addition, LCSB informed Dr. Parker he needed to complete his professional goals for the current year, including "Diversity in hiring administrators that reflect the make up of

the community." Dr. Parker opposed this goal, stating it was inappropriate and a possible violation of the law.

27. On November 9, 2018, a LCSB employee made a racial harassment complaint against Ms. Moody, which was forwarded to Dr. Parker and Dan Russell ("Mr. Russell"), Assistant Superintendent and Compliance Officer of LCSB.

28. On November 12, 2018, Dr. Parker and Mr. Russell contacted and engaged Nicole Thompson, Esquire ("Ms. Thompson") of the Richmond law firm Harrell & Chambliss LLP, as a third-party investigator into the complaint against Ms. Moody.

29. On November 13, 2018, Dr. Parker and Ms. Thomasson met with Ms. Moody to inform her of the racial harassment complaint. Ms. Moody told Dr. Parker that she would no longer be quiet and "it is going to hit the fan now," or words to that effect.

30. On November 15, 2018, Dr. Parker reiterated to Ms. Thomasson that he could not have a stated goal implying a race-based hiring quota. Ms. Thomasson stated, "I don't care. We push the envelope. We will do it until someone complains. You work for us, and you will do what we tell you to do," or words to that effect.

31. Pursuant to the Contract, Dr. Parker and Joan Gravatt ("Ms. Gravatt"), a member of LCSB and on behalf of LCSB, began discussing contract renewal terms on November 20, 2018.

32. On November 29, 2018, Ms. Gravatt presented Dr. Parker with a contract including a two-year term with an annual salary of $136,100, a $400 monthly vehicle allowance, and a $5,000 contribution to a tax deferred account ("TDA").

33. At this time, Dr. Parker asked Ms. Gravatt for a four-year term. Ms. Gravatt, however, advised the terms were non-negotiable as LCSB was 3-to-2 in favor of the terms. Board members Ms. Young and Ms. Moody were not in favor of the contract terms. Ms. Gravatt further

advised and/or implied Ms. Moody would not agree to the contract terms because she does not trust Dr. Parker and she believed Dr. Parker was responsible for a racial harassment complaint against filed against her on November 9, 2018.

34. As soon as this information became known to Dr. Parker, he advised Dan Russell ("Mr. Russell"), Assistant Superintendent and Compliance Officer of LCSB. In turn, Mr. Russell sent a letter detailing the retaliatory actions of Ms. Moody to Ms. Thompson. *See* Letter from Mr. Russell to Ms. Thompson, Nov. 29, 2019, attached as Exhibit D.

35. On or about December 4, 2108, in a closed meeting, Dr. Parker and LCSB discussed the contract renewal terms presented to Dr. Parker by Ms. Gravatt on November 29, 2019. Dr. Parker again requested a four-year term. In addition, Dr. Parker requested LCSB make the contract renewal discussions public and solicit public comment. LCSB was insistent on a two-year term and reminded Dr. Parker the vote was only 3-to-2. At this time, Ms. Moody advised Dr. Parker that she was not voting to renew his contract because of lack of diversity.

36. The formal vote on the contract renewal of Dr. Parker renewal contract was to take place at the LCSB meeting on January 8, 2019.

37. On December 11, 2018, Ms. Thompson issued the findings and recommendations from the investigation into the racial harassment complaint made against Ms. Moody. Ms. Thompson concluded Ms. Moody violated LCSB policy by creating an offensive working environment for a LCSB employee. Further, Ms. Thompson found Ms. Moody's statements to a LCSB employee constituted racial harassment and are part of a continuing pattern of behavior regarding comments to Caucasian teachers. Appendix A of the report listed Dr. Parker as "School Division Staff Interviewed," and stated, "[t]he policies of the Lancaster County School Board prohibit the harassment of and/or the retaliation against school division employees who cooperate

in investigations regarding harassment or discrimination." Ms. Thompson submitted the report to a LCSB subcommittee.

38. On December 13, 2018, Ms. Young sent Dr. Parker an e-mail commending him for his "excellent" efforts on the workforce trajectory and his outreach to the business community.

39. On December 17, 2018, the LCSB subcommittee had a meeting regarding the report issued by Ms. Thompson, and, on December 19, 2018, issued a report, generally accepting the recommendations of Ms. Thompson. Since then, however, LCSB has failed to properly implement any of Ms. Thompson's recommendations.

40. On January 3, 2019, Dr. Parker met with Ms. Thomasson, LCSB Chair. Dr. Parker requested a copy of his new contract to present to the VASS attorney for review prior to the LCSB meeting on January 8, 2019. At this time, Ms. Thomasson advised Dr. Parker that there no longer were enough votes to extend his contract due to "community complaints" claiming Dr. Parker was not doing a good job and the schools were not improving.

41. On January 3, 2019, Ms. Thomasson called Jason Bellow, Board of Supervisors Chairman for Lancaster County, and advised him that Dr. Parker's contract will not be approved.

42. At the LCSB meeting on January 8, 2019, Ms. Moody spoke about "equity" and the need for "diversity" in the school staff and administration, implied African-American students did not feel safe with Caucasian teachers, and, overall, made allegations implicating the leadership of Dr. Parker. Ms. Moody's statements included:

    a. "We are seeing all this racial division and we can't openly talk about racism, equity, and unfairness here but every school in the northern neck had African-American equity in administration. We have two (the Dean of Students). The only time black kids see the Dean or see an administrator is when they are in trouble. Then they carry their little

bad butts on down to the SS room and guess who's there, somebody else who is African-American working.  So I find it very hurtful and very sad that I have sat here for three years and I only asked for one thing.  Don't ask for much and Dr. Parker can tell you that.  Equity and fairness, some ought to bring it around."

      b.      "Look around the room at all the teachers, look at your diversity or lack thereof and you want to make me out to be the problem . . . ."

43.      At the meeting, LCSB did not vote on Dr. Parker's contract renewal.

44.      On January 9, 2019, Ms. Thomasson met with Dr. Parker, again advising him of LCSB's plan to not renew his contract.  During the meeting, Ms. Thomasson stated Dr. Parker could not understand why African-American students did not feel safe with Caucasian teachers because he was a Caucasian male, or words to that effect.

45.      On February 15, 2019, in a very brief special meeting, LCSB, on motion of Ms. Thomasson, voted 3-2 not to renew Dr. Parker's employment contract.  Both Ms. Thomasson and Ms. Moody voted not to renew Dr. Parker's contract.  LCSB ignored questions from the audience.

46.      After the meeting, Ms. Young stated to a reporter, LCSB's decision not to renew Dr. Parker's contract "was based in part on a downward trend in his evaluations."

47.      In addition, Ms. Thomasson stated to a reporter, "I know a lot of people have seen one evaluation of the superintendent but there have been ongoing evaluations through the school year that no one has seen," implying Dr. Parker received poor performance evaluations.

48.      The statements of Young and Thomasson were made in part to cover up and/or excuse their own votes and LCSB's retaliatory actions of non-renewal of Dr. Parker's contract.

49.      On February 19, 2019, LCSB placed Dr. Parker on administrative leave without explanation.

## STATEMENT OF CLAIMS

### COUNT I:

**DISCRIMINATION FOR TESTIFYING, ASSISTING, OR PARTICIPATING IN AN INVESTIGATION OF RACIAL HARASSMENT (42 U.S.C. § 2000e-3(a)) AGAINST DEFENDANTS LCSB, KENYA MOODY & AUDREY THOMASSON**

50. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

51. Ms. Thompson interviewed Dr. Parker as part of her investigation into the racial harassment complaint made against Ms. Moody.

52. Ms. Moody opposed Dr. Parker's contract renewal due to Dr. Parker's involvement in the racial harassment investigation conducted by Ms. Thompson.

53. On December 11, 2018, Ms. Thompson issued the findings and recommendations from the investigation into the racial harassment complaint made against Ms. Moody, concluding Ms. Moody's statements to a LCSB employee constituted racial harassment and are part of a continuing pattern of behavior regarding comments to Caucasian teachers.

54. In the report, Ms. Thompson lists Dr. Parker as "School Division Staff Interviewed." Ms. Thompson submitted the report to a LCSB subcommittee.

55. Approximately two weeks after the LCSB subcommittee issued a report, generally accepting the recommendations of Ms. Thompson, Ms. Thomasson advised Dr. Parker that there no longer were enough votes to extend his contract due to "community complaints" claiming Dr. Parker was not doing a good job and the schools were not improving.

56. Consequently, on February 15, 2019, in a very brief special meeting, LCSB voted 3-2 not to renew Dr. Parker's employment contract.

57. LCSB, Ms. Thomasson, and Ms. Moody discriminated against Dr. Parker because he testified, assisted, and/or participated in an investigation of racial harassment.

58. Due to the actions of Defendants, Plaintiff suffered lost wages and benefits, mental and emotional distress, anxiety, shame, humiliation, embarrassment, loss of enjoyment of life, helplessness, hopelessness, inconvenience, stress, and attorneys' fees and costs.

## COUNT II:

**DISCRIMINATION FOR OPPOSING AN UNLAWFUL EMPLOYMENT PRACTICE
(42 U.S.C. § 2000e-3(a))
AGAINST DEFENDANTS LCSB, KENYA MOODY & AUDREY THOMASSON**

59. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

60. Ms. Thomasson, on behalf of LCSB, repeatedly requested and/or ordered Dr. Parker to hire more African-American staff and administrators even if such candidates are less qualified than Caucasian candidates

61. This practice, and the repeated efforts of LCSB to implement it by Ms. Thomasson and Ms. Moody, constitutes an unlawful use of race in its hiring practice for administrators.

62. Dr. Parker repeatedly and strongly opposed this practice, advising this practice was inappropriate and a possible violation of the law.

63. Ms. Thomasson stated, "I don't care.  We push the envelope.  We will do it until someone complains.  You work for us, and you will do what we tell you to do," or words to that effect.

64. In addition, Ms. Moody advised Dr. Parker that she was not voting to renew his contract because of lack of diversity.

65. During the LCSB meeting on January 8, 2019, Ms. Moody implied Dr. Parker failed to hire enough African-American administrators.

66. LCSB does not have an affirmative action policy.

67. LCSB, including Ms. Thomasson and Ms. Moody, voted not to renew Dr. Parker's contract because he opposed their attempts to require him to provide preferential treatment to unqualified African-American job applicants.

68. Due to the actions of Defendants, Plaintiff suffered lost wages and benefits, mental and emotional distress, anxiety, shame, humiliation, embarrassment, loss of enjoyment of life, helplessness, hopelessness, inconvenience, stress, and attorneys' fees and costs.

## COUNT III:

### DEFAMATION
### AGAINST DEFENDANTS CAROLYN YOUNG & AUDREY THOMASSON

69. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

70. At all times, Dr. Parker was an excellent employee of LCSB and satisfactorily performed his job duties.

71. For each year of his employment, Dr. Parker received a "highly effective" overall performance rating, including ratings (out of 5) of 4.6 for the 2014-2015 school year, 4.9 for the 2015-2016 school year, 5.0 for the 2016-2017 school year, and 4.86 for the 2017-2018 school year.

72. Dr. Parker received his most recent performance report for the 2017-2018 school year on November 6, 2018.

73. After LCSB voted not to renew Dr. Parker's employment contract, Ms. Young stated to a reporter, LCSB's decision not to renew Dr. Parker's contract "was based in part on a downward trend in his evaluations."

74. In addition, Ms. Thomasson stated to a reporter, "I know a lot of people have seen one evaluation of the superintendent but there have been ongoing evaluations through the school year that no one has seen," implying Dr. Parker received poor performance evaluations.

75. The statements about Dr. Parker set forth above are false as he never received poor performance evaluations.

76. Ms. Young and Ms. Thomasson made these statements in an effort to justify the unlawful, discriminatory, and retaliatory actions of LCSB toward Dr. Parker.

77. The statements about Dr. Parker above impute to Dr. Parker unfitness to perform the duties of employment and prejudice Dr. Parker in his profession or trade.

78. Due to the false and defamatory statement about Dr. Parker set forth above, Dr. Parker suffered mental and emotional distress, anxiety, shame, humiliation, embarrassment, loss of enjoyment of life, helplessness, hopelessness, and great injury to his good name and reputation in the community.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in his favor and against Defendants, Lancaster County School Board, Kenya Moody, Audrey Thomasson, and Carolyn Young, in whole or in part;

B. Declare the acts and practices complained of herein are in violation of his rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

C. Enjoin Defendants from engaging in such unlawful employment practice;

D. Order such affirmative action as may be appropriate, including, but not limited to, awarding Plaintiff front pay;

E. Award Plaintiff all back pay and benefits, including salary increases, retirement benefits, possible bonuses, vacation pay, and health insurance, with interest on same running from February 19, 2019 until the date a final judgment is entered for him;

F. Award Plaintiff money damages for the personal and professional reputational damages and the severe emotional distress damages caused by the unlawful actions of Defendants;

G. Award Plaintiff reasonable attorneys' fees and costs;

H. Award Plaintiff a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back or front pay;

  I. Award Plaintiff pre- and post-judgment interest on any monetary award;

  J. Award Plaintiff all other such equitable relief as may be appropriate to effectuate the purposes of 42 U.S.C. § 2000e-5, including, but not limited to, leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

  **PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

    Respectfully submitted,

    **STEVEN D. PARKER**
    *Plaintiff*


By:    /s/
    James B. Thorsen, Esq.
    VSB No. 18113
    Jesse A. Roche, Esq.
    VSB No. 82579
    Attorneys for Steven D. Parker
    THORSENALLEN LLP
    5413 Patterson Avenue, Suite 201
    P. O. Box 17094
    Richmond, Virginia 23226
    Telephone: (804) 447-7234
    Facsimile: (804) 447-7813
    E-mail: jthorsen@thorsenallen.com
    E-mail: jroche@thorsenallen.com