IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVEN D. PARKER, Ed.D.,

      **Plaintiff,**

v.                                                                             **Civil Action No. 3:19cv436**

LANCASTER COUNTY SCHOOL BOARD, *et al.*,

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on three motions:

(1)    Defendant Kenya Moody's Motion to Dismiss ("Ms. Moody's Motion to Dismiss"), (ECF No. 8);

(2)    Defendant Audrey Thomasson's Motion to Dismiss ("Chair Thomasson's Motion to Dismiss"), (ECF No. 5); and,

(3)    Defendant Carolyn Young's Motion to Dismiss ("Ms. Young's Motion to Dismiss"), (ECF No. 11).

Plaintiff Steven D. Parker, Ed.D. ("Dr. Parker") responded to each of the motions to dismiss, (ECF Nos. 12–14), and Ms. Moody and Chair Thomasson replied, (ECF Nos. 16, 15). Ms. Young did not reply to Dr. Parker's response and the time to do so has expired.

These matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction over Dr. Parker's federal claims pursuant to 28 U.S.C. § 1331[1] and supplemental jurisdiction over Dr. Parker's state law claims

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). Dr. Parker brings two counts against the Lancaster County School Board (the "School Board"), Ms. Moody, and Chair Thomasson, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e).

pursuant to 28 U.S.C. § 1367.² For the reasons stated below, the Court will grant Ms. Moody's Motion to Dismiss, deny Ms. Young's Motion to Dismiss, and grant in part and deny in part Chair Thomasson's Motion to Dismiss.

## I. Background

### A. Allegations in the Complaint

Dr. Parker, the former Superintendent of the Lancaster County Public School Division, brings claims against the School Board as well as two of its members—Ms. Moody and Ms. Young—and the Chair of the School Board—Chair Thomasson. (Compl. 1–2, ECF No. 1.) The claims arise from events surrounding the School Board's decision not to renew Dr. Parker's employment contract. Dr. Parker alleges three counts as follows:

**Count I:** 42 U.S.C. § 2000e-3(a). Dr. Parker alleges that the School Board, Ms. Moody, and Chair Thomasson "discriminat[ed] [against Dr. Parker] for testifying, assisting, or participating in an investigation of racial harassment." (*Id.* 9.)

**Count II:** 42 U.S.C. § 2000e-3(a). Dr. Parker alleges that the School Board, Ms. Moody, and Chair Thomasson "discriminat[ed] [against Dr. Parker] for opposing an unlawful employment practice." (*Id.* 10.)

**Count III:** Dr. Parker alleges that Ms. Young and Chair Thomasson defamed him when they spoke to a reporter following the meeting during which the School Board decided not to renew Dr. Parker's employment contract. (*Id.* 11.)

The School Board answered the Complaint, (ECF No. 7), and Ms. Moody, Chair Thomasson, and Ms. Young each filed a Motion to Dismiss.

---

² The Court exercises supplemental jurisdiction over Dr. Parker's state-law defamation claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy....").

2

## B. Factual Background[3]

On May 14, 2014, Dr. Parker entered into a three-year employment contract to serve as Superintendent of Lancaster County Public School Division. (Compl. ¶ 17.) The School Board later extended this contract to June 30, 2019. (*Id.* ¶ 18.) Dr. Parker contends that he was an "excellent employee" and "satisfactorily performed his job duties" during his tenure as Superintendent. (*Id.* ¶ 21.) Dr. Parker says that he "received a 'highly effective' overall performance rating, including ratings (out of 5) of 4.6 for the 2014-2015 school year, 4.9 for the 2015-2016 school year, 5.0 for the 2016-2017 school year, and 4.86 for the 2017-2018 school year." (*Id.* ¶ 22.) Dr. Parker states that approximately two months before the School Board voted not to renew his contract, Ms. Young, a member of the School Board, "commend[ed] him for his 'excellent' efforts on the workforce trajectory and his outreach to the business community." (*Id.* ¶ 38.)

In May 2018, approximately nine months before the School Board voted not to renew Dr. Parker's contact, Dr. Parker contends that Chair Thomasson told Dr. Parker and the Assistant Superintendent that they "need[ed] to hire more African-American administrators even if such candidates are less qualified than Caucasian candidates." (*Id.* ¶ 23.) Dr. Parker states that he "strongly opposed this practice." (*Id.*) Dr. Parker contends that when he later told Chair Thomasson that he did not support a goal "implying a race-based hiring quota," Chair Thomasson said, "[y]ou work for us, and you will do what we tell you to do." (*Id.* ¶ 30.)

---

[3] For the purpose of the Rule (12)(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in the Complaint as true, and draw all reasonable inferences in favor of Dr. Parker. *Kensington Volunteer Fire Dep't v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("[A] court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

In August and September 2018, discussions began between the School Board and Dr. Parker regarding the renewal of Dr. Parker's employment contract. (*Id.* ¶ 24.) At that time, all members of the School Board expressed the intent to renew Dr. Parker's contract. (*Id.* ¶ 25.)

On November 6, 2018, Dr. Parker received his performance report for the 2017–2018 school year, a 4.86 out of 5, and was informed that he "needed to complete his professional goals for the current year, including '[d]iversity in hiring administrators that reflect the makeup of the community.'" (*Id.* ¶ 26.) Three days later, Dr. Parker became aware of a racial harassment complaint against Ms. Moody, a member of the School Board. (*Id.* ¶ 27.) In response, Dr. Parker hired a third-party to investigate the complaint. (*Id.* ¶ 28.)

Approximately twenty days later, Dr. Parker received a proposed contract that included a two-year term. (*Id.* ¶ 32.) Dr. Parker asked for a four-year term, but a member of the School Board told him that the terms were "non-negotiable as [the School Board] was 3-to-2 in favor of the terms" and that "[b]oard members Ms. Young and Ms. Moody were not in favor of the contract terms." (*Id.* ¶ 33.) Dr. Parker alleges that the school board member further implied that "Ms. Moody would not agree to the contract terms because . . . she believed Dr. Parker was responsible for a racial harassment complaint [sic] filed against her." (*Id.*) On December 4, 2018, Dr. Parker and the School Board again discussed his contact terms, and it was at this time that Ms. Moody "advised Dr. Parker that she was not voting to renew his contract because of lack of diversity." (*Id.* ¶ 35.)

On December 11, 2018, approximately seven days after these discussions, the third-party investigator issued findings from the racial harassment investigation involving Ms. Moody. (*Id.* ¶ 37.) The report stated that "Ms. Moody violated [School Board] policy" and Ms. Moody's statements "constituted racial harassment and are part of a continuing pattern of behavior

4

regarding comments to Caucasian teachers." (*Id.*) The report listed Dr. Parker as a staff member interviewed. (*Id.*) The investigator submitted her report to a School Board subcommittee. (*Id.*) On December 17, 2018, six days after the investigator submitted her report, the subcommittee met regarding the report and accepted the recommendations. (*Id.* ¶ 39.)

On January 3, 2019, Dr. Parker met with Chair Thomasson and requested a copy of his new contract to review prior to the formal vote on January 8, 2019. (*Id.* ¶ 40.) At that time, Chair Thomasson advised Dr. Parker that "there no longer were enough votes to extend his contract due to 'community complaints' claiming Dr. Parker was not doing a good job and the schools were not improving." (*Id.*) At the January 8, 2019 School Board meeting, the School Board did not vote on Dr. Parker's contract as it had planned to do. (*Id.* ¶ 43.)

On February 15, 2019, about five weeks later, "in a very brief special meeting," the School Board voted not to renew Dr. Parker's employment contract. (*Id.* ¶ 45.) Both Chair Thomasson and Ms. Moody voted not to renew the contract. (*Id.*) Dr. Parker alleges that after it voted not to renew his contract, the School Board "ignored questions from the audience." (*Id.*) After this meeting, Ms. Young stated to a reporter that the School Board's "decision not to renew Dr. Parker's contract 'was based in part on a downward trend in his evaluations.'" (*Id.* ¶ 46.) In addition, Chair Thomasson stated to the same reporter, "I know a lot of people have seen one evaluation of the superintendent but there have been ongoing evaluations through the school year that no one has seen." (*Id.* ¶ 47.) Dr. Parker alleges that these statements constitute defamation because they "imply[] [he] received poor performance evaluations." (*Id.* ¶ 47.)

Dr. Parker asserts that Chair Thomasson and Ms. Young's statements to the reporter are false, and that they made the statements "in part to cover up and/or excuse their own votes and [the School Board's] retaliatory actions of non-renewal of Dr. Parker's contract." (*Id.* ¶ 48.) Dr.

5

Parker states that soon after the meeting, the School Board "placed [him] on administrative leave without explanation." (*Id.* ¶ 49.)

### C. Procedural Background

Dr. Parker filed his three-count Complaint against the School Board, the Chair of the School Board, Chair Thomasson, and two School Board members, Ms. Moody and Ms. Young. (Compl. 1.) The School Board answered the Complaint. (ECF No. 7.)

Ms. Moody, Chair Thomasson, and Ms. Young each filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6),[4] asking the Court to dismiss the counts against them. (ECF Nos. 5, 8, 11.) The matters are fully briefed and ripe for disposition.

## II. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of

---

[4] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)).

### III. Analysis

In Counts I and II, Dr. Parker brings claims against the School Board, Ms. Moody, and Chair Thomasson for conduct arising under Title VII of the Civil Rights Act of 1964. In Count III, Dr. Parker brings a claim of defamation against Chair Thomasson and Ms. Young for their statements to a reporter. For the reasons stated below, the Court will grant Ms. Moody's Motion to Dismiss, deny Ms. Young's Motion to Dismiss, and grant in part and deny in part Chair Thomasson's Motion to Dismiss.

Specifically, the Court will dismiss the Title VII claims against Ms. Moody and Chair Thomasson and will allow the defamation claims against Ms. Young and Chair Thomasson to proceed. Because the School Board answered, the Title VII claims will also proceed against the School Board.

### A. The Court Will Dismiss Counts I and II against Chair Thomasson and Ms. Moody

Dr. Parker does not specify whether he brings his Title VII claims against Ms. Moody and Chair Thomasson in their individual capacities or their official capacities as members of the School Board. Because Dr. Parker's Title VII claims against Ms. Moody and Chair Thomasson fail regardless of whether he brings the claims against them in their individual or official capacities, the Court will dismiss counts I and II against Ms. Moody and Chair Thomasson.

First, Title VII does not provide for individual liability for a person's delegable decisions made on behalf of their employers. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998). "This principle applies for Title VII claims against individual school board members." *Pettis v. Nottoway Cty. Sch. Bd.*, No. 3:12cv864, 2013 WL 3063704, at *5 (E.D. Va. June 17, 2013). First, Dr. Parker concedes that Ms. Moody and Chair Thomasson are not individually liable under Title VII. (Resp. Thomasson Mot. Dismiss 1, ECF No. 12; Resp. Moody Mot. Dismiss. 1, ECF No. 13.) Because Ms. Moody and Chair Thomasson are individuals who made decisions on behalf of the School Board, Title VII does not provide for liability. The Court will dismiss Counts I and II to the extent Dr. Parker brings them against Ms. Moody and Chair Thomasson in their individual capacities.

Second, to the extent Dr. Parker intends to assert claims against Ms. Moody and Chair Thomasson in their official capacities as members of the School Board, these claims falter as duplicative. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal quotations omitted). An official capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166. Because Dr. Parker names the School Board as a party to the suit, to the extent he brings claims against Ms. Moody and Chair

Thomasson in their official capacities, those claims must fail as duplicative. The Court will dismiss Counts I and II to the extent Dr. Parker brings them against Ms. Moody and Chair Thomasson in their official capacities.

As such, the Court will grant Ms. Moody's Motion to Dismiss, grant in part Chair Thomasson's Motion to Dismiss, and dismiss Counts I and II against Ms. Moody and Chair Thomasson. Because Dr. Parker brings only the Title VII claim against Ms. Moody, the Court will dismiss Ms. Moody from this litigation. Counts I and II will proceed against the School Board only.

### B. The Court Will Allow Count III to Proceed Against Ms. Young and Chair Thomasson

#### 1. Legal Standard: Defamation

In Virginia, a plaintiff claiming defamation must allege the "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). "To prevail on a claim for defamation, a party must prove by a preponderance of the evidence that the allegedly defamatory statements are both false and defamatory." *Cook, Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Va. Acquisitions LLC*, No. 312cv131, 2012 WL 1898616, at *3 (E.D. Va. May 23, 2012) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). For a statement to be defamatory, "the allegedly defamatory words must carry 'the requisite defamatory "sting" to one's reputation.'" *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016) (quoting *Schaecher v. Bouffault*, 772 S.E.2d 589 (Va. 2015)). "Such language is of the kind that 'tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* (quoting *Schaecher*, 772 S.E.2d 589).

"If the statements at issue are either not defamatory, objectively true, or protected expressions of opinion," no actionable defamation exists. *Cook, Heyward, Lee, Hopper, & Freehan*, 2012 WL 1898616, at *3 (citing *Am. Commc'ns Network v. Williams*, 568 S.E.2d 683, 686 (Va. 2002)). Similarly, "rhetorical hyperbole, even if insulting, offensive, or otherwise inappropriate, is not actionable." *Choi v. Kyu Chul Lee*, 312 Fed. Appx. 551, 553 (4th Cir. 2009) (internal quotation marks and citations omitted).

Nonetheless, "[d]efendants can be held liable for defamation 'when a negative characterization of a person is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [listener]." *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, No. 7:09cv00472, 2011 WL 1327396, at *11 (W.D. Va. Apr. 6, 2011) (quoting Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 4:3.2 (4th ed. 2010)). "The test for determining whether facts that may be actionable defamation have been implied is 'whether a reasonable listener would take [the speaker] to be basing his [or her] 'opinion' on knowledge of facts of the sort than can be evaluated in a defamation suit.'" *Id.* (citing Sack, *supra*, § 4:3.2). "In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor." *Carwile v. Richmond Newspapers*, 82 S.E.2d 588, 592 (Va. 1954).

The requisite intent a plaintiff must prove in a defamation action depends on the plaintiff's status as a public or private figure and the damages sought.[5] *Suarez v. Loomis*

---

[5] Neither party addresses whether Dr. Parker constitutes a public or private figure. For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will draw all reasonable inferences in favor of Dr. Parker. *See Kensington Volunteer Fire Dep't, Inc.*, 684 F.3d at 467. The Court will assume for purposes of this Motion to Dismiss that Dr. Parker acts as a private

*Armored US, LLC*, No. 3:10cv690, 2010 WL 5101185, at *2 (E.D. Va. Dec. 7, 2010). Under Virginia law, a private individual must make a showing that the Defendants "published the statement knowing that it was 'false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Sepmoree v. Bio-Med. Applications of Va., Inc.*, No. 2:14cv141, 2014 WL 4444435, at *7 (quoting *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985)).

### 2. Defamation Claims Against Thomasson and Young

Under the deferential reading this Court must give Dr. Parker's Complaint, Dr. Parker pleads facts sufficient to state a defamation claim against Chair Thomasson for her statement, "I know a lot of people have seen one evaluation of the superintendent but there have been ongoing evaluations through the school year that no one has seen." (Compl. ¶ 74.) Dr. Parker also pleads facts sufficient to state a defamation claim against Ms. Young for her statement that the decision not to renew Dr. Parker's contract "was based in part on a downward trend in his evaluations." (Compl. ¶ 73.) Although Chair Thomasson and Ms. Young[6] contend that the statements "[do] not imply the meaning attributed by Parker," (Mem. Supp. Thomasson Mot. Dismiss 8), because both Chair Thomasson and Ms. Young's statements meet each element of the defamation test,

---

figure because doing so favorably awards him a lower standard when proving intent in a defamation action. *See id.*

[6] Because Ms. Young's Motion to Dismiss adopted and incorporated Chair Thomasson's Brief in Support of the Motion to Dismiss, Ms. Young does not address Dr. Parker's allegations specifically. (Young Mot. Dismiss ¶ 3.) This Court discourages parties from this practice of adopting another's argument. Doing so frequently leads to unnecessary confusion. For instance, here, Ms. Young specifically adopted Chair Thomasson arguments to dismiss Counts I and II, given that she was not Dr. Parker's employer. (Young Mot. Dismiss ¶ 1 ("Plaintiff has not stated a claim upon which relief can be granted under Title VII of the Civil Rights Act of 1964 against Young. Young was not Plaintiff's employer, and Plaintiff has not alleged facts fact [sic] sufficient to establish a cause of action against Young.").) While Counts I and II lay against Chair Thomasson, Dr. Parker did not allege Title VII claims against Ms. Young.

11

the Court will deny Chair Thomasson and Ms. Young's Motions to Dismiss as to Count III—the defamation count.

First, both statements meet the publication element. *See Jordan*, 612 S.E.2d at 206. Chair Thomasson and Ms. Young published their statements when they made the statements to the reporter. In support of his claim Dr. Parker attaches the newspaper article in which the reporter published Chair Thomasson and Ms. Young's statements, which provides support for Dr. Parker's contention that Chair Thomasson and Ms. Young spoke these statements to the reporter.[7] Dr. Parker, therefore, plausibly alleges that Chair Thomasson and Ms. Young published their statements, thereby meeting the first element of a defamation claim.

Second, Dr. Parker sufficiently alleges that Chair Thomasson and Ms. Young's statements satisfy both elements to establish an actionable statement: untrue and defamatory meaning. *Cook, Heyward, Lee, Hopper, & Feehan, P.C.*, 2012 WL 1898616 at *3. Chair Thomasson's statement that "there have been ongoing evaluations through the school year," (Compl. ¶ 74), and Ms. Young's statement that the decision not to renew Dr. Parker's contract "was based in part on a downward trend in his evaluations," (*id.* ¶ 73), can both be proven false. *See Schaecher*, 772 S.E.2d at 597. They are not opinions. If other negative evaluations existed, the School Board would indeed have a record of those evaluations and Chair Thomasson, as Chair of the School Board, and Ms. Young, as a member of the School Board, would have knowledge of those evaluations. Because Dr. Parker alleges these statements constitute false

---

[7] The Court can consider this newspaper article because it constitutes a document central to Dr. Parker's complaint and none of the defendants dispute its authenticity. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." (citations omitted)).

12

statements, at this stage of the proceedings, the Court must presume the statements' falsity. *See McCray v. Infused Sols., LLC,* No. 4:14cv158, 2017 WL 4111958, at *3 (citing *Chapin*, 993 F.2d at 1092) ("At the Motion to Dismiss stage, the Court must accept as false any statements which the Complaint alleges to be false.").

To be defamatory, the statement must also carry the requisite "sting" to one's reputation. *Dragulescu*, 223 F. Supp. 3d at 507 (quoting *Schaecher*, 772 S.E.2d 589). A statement can be defamatory "when a negative characterization of a person is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [public]." *Baylor*, 2011 WL 1327396 at *11. In both Chair Thomasson and Ms. Young's statements, an implication arises that Chair Thomasson and Ms. Young, as Chair of the School Board and a member of the School Board respectively, have some knowledge of additional evaluations that the general public does not. Because Chair Thomasson contrasts these "ongoing evaluations" to Dr. Parker's previous positive evaluation, she inherently implies that these "ongoing evaluations" constitute negative evaluations. (Compl. ¶ 74.) The Court also makes the reasonable inference that these statements imply that these allegedly negative evaluations serve as the reason the School Board did not extend Dr. Parker's contract. *See Carwile*, 82 S.E.2d at 592 ("[E]very fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor.").

Chair Thomasson and Ms. Young argue that their statements do not constitute defamation because "[a]llegations of unsatisfactory job performance...do not rise to the level of defamation per se." (Mem. Supp. Thomasson Mot. Dismiss 8.) They cite *Mann v. Heckler & Koch Defense*

13

*Inc.*, 639 F. Supp. 2d 619, 635 (E.D. Va. 2009), *aff'd*, 630 F.3d 338 (4th Cir. 2010)[8] and *McBride v. City of Roanoke Redevelopment & Housing Authority*, 871 F.Supp. 885, 892 (W.D. Va. 1994), *aff'd sub nom. McBride v. Glenn*, 78 F.3d 579 (4th Cir. 1996)[9] in support. In response, Dr. Parker asserts that stating that these negative evaluations *exist* constitutes defamation because their mere existence, especially when contrasted with his prior positive evaluations, imply that negative factors impacted the School Board's decision not to renew his contract. He cites *Echtenkamp v. Loudon County Public Schools*, 263 F. Supp. 2d 1043 (E.D. Va. 2003) in support.

---

[8] In *Mann*, the United States District Court for the Eastern District of Virginia held that the statements regarding a self-described whistleblower being placed on leave did not amount to defamation because nothing in the statements provided a basis for the implications the plaintiff alleged. 639 F. Supp. 2d at 636. Mann alleged that an e-mail by his supervisor to Mann's colleagues suggested that Mann was under investigation for "defrauding the government." *Id.* The *Mann* Court found that the phrase used by Mann's supervisor in the e-mail stating that Mann was "pending internal investigation" did not imply that "Mann was under investigation specifically for defrauding the government." *Id.* at 634, 636. Rather, the statements were "neutrally-worded." *Id.* at 636.

However, Chair Thomasson and Ms. Young's statements differ from those at issue in *Mann* and adequately provide a basis for the implications that Dr. Parker alleges. Specifically, for purposes of this Motion to Dismiss, when Chair Thomasson contrasts the "ongoing evaluations" to Dr. Parker's previous positive evaluation, an inference arises that she implied that these evaluations constituted negative evaluations. (*See* Compl. ¶ 74.) Similarly, Ms. Young's statement implied that "downward trends" in Dr. Parker's evaluations served as the reason the School Board did not extend his contract. (*See id.* ¶ 73.)

[9] In *McBride*, the court considered statements made by McBride's employer publicly announcing McBride's termination and the reason for the decision. 871 F. Supp at 891. Specifically, his employer announced McBride's dismissal, citing "unsatisfactory job performance," while confirming there was "no suggestion of unlawful conduct or other impropriety." *Id.* The *McBride* court concluded that these statements were not defamatory because "allegations of unsatisfactory job performance do not *in and of themselves* so harm [a] reputation." *Id.* at 892 (emphasis added).

However, in deciding this Motion to Dismiss, Chair Thomasson and Ms. Young's statements did not constitute allegations of unsatisfactory job performance. Rather, an inference can be made that the statements imply, by mentioning other evaluations, that other negative factors impacted the School Board's decision not to renew Dr. Parker's contract.

14

Chair Thomasson and Ms. Young's statements more closely mirror those in *Echtenkamp*–outlined below–and plausibly constitute defamation at this stage.

Especially reading Dr. Parker's allegations favorably, Chair Thomasson and Ms. Young's statements more closely mirror the statements in *Echtenkamp*. In *Echtenkamp*, Echtenkamp alleged that she was defamed by her supervisors and coworkers. She claimed that many of her coworkers reported false information to her supervisors. *Echtenkamp*, 263 F. Supp. 2d 1052. Further, Echtenkamp contended that her supervisors asserted "a series of [defamatory] statements . . . in their evaluations and memoranda." *Id.* at 1052. The *Echtenkamp* court concluded that the statements that the plaintiff "fail[ed] to meet professional standards," that her "overall performance remain[ed] in need of improvement," and that her behavior was "unprofessional and in need of corrective action" implied that the plaintiff was unfit to perform her duties and amounted to defamation. *Id.* at 1064. Similarly, Chair Thomasson and Ms. Young's statements, which imply the existence of negative ongoing evaluations that justified the decision not to renew Dr. Parker's contract, mirror the meaning attributed to the false allegations of unsatisfactory job performance in *Echtenkamp*. Further, the implication of having failed to meet professional standards carries the requisite "sting" to constitute defamation. *See id.* at 1064. Therefore, at this procedural juncture, Dr. Parker's claim meets the second element of the defamation test: an actionable statement.

Finally, for purposes of this Motion to Dismiss, Dr. Parker adequately establishes the intent element which requires that the Defendants "published the statement knowing that it was 'false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Sepmoree*, 2014 WL 4444435, at *7. Specifically, he alleges that the statements "are false as [Dr. Parker] never

received poor performance evaluations"[10] and that Chair Thomasson and Ms. Young made the statements to "justify the unlawful, discriminatory, and retaliatory actions of [the School Board] toward Dr. Parker." (Compl. ¶¶ 75–76.) Therefore, Chair Thomasson and Ms. Young made the statements without "reasonable grounds for such belief" that negative evaluations existed, and Dr. Parker plausibly alleges that Chair Thomasson and Ms. Young made the statements with the requisite intent, the third and final element of the defamation test. *See Sepmoree*, 2014 WL 4444435, at *7.

Because Dr. Parker alleges plausible facts to support his defamation claim against both Chair Thomasson and Ms. Young, the Court will deny Chair Thomasson and Ms. Young's Motions to Dismiss as to Count III—the defamation claim.

---

[10] "At the Motion to Dismiss stage, the Court must accept as false any statements which the Complaint alleges to be false." *McCray v. Infused Sols., LLC*, No. 4:14cv158, 2017 WL 4111958, at *3 (E.D. Va. 2017) (citing *Chapin*, 993 F.2d at 1092).

## IV. Conclusion

For the foregoing reasons, the Court will grant Ms. Moody's Motion to Dismiss and dismiss Ms. Moody as a defendant in this lawsuit. The Court will grant in part and deny in part Chair Thomasson's Motion to Dismiss, specifically, the Court will dismiss Counts I and II, the Title VII claims, against Chair Thomasson but will allow Count III, the defamation claim to proceed. Finally, the Court will deny Ms. Young's Motion to Dismiss. Therefore, the Court will allow Counts I and II, the Title VII claims, to proceed against the School Board, which answered the Complaint, and Count III, the defamation claim, to proceed against both Chair Thomasson and Ms. Young.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 11/4/2019
Richmond, Virginia